# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

MICHAEL J. ALLEN,

                                        Plaintiff,

                                                      9:16-CV-47
                        v.                            (GTS/ATB)

H. GRAHAM, et al.,

                                        Defendants.

MICHAEL J. ALLEN, Plaintiff, pro se
AIMEE M. PAQUETTE, Asst. Attorney General for Defendants

ANDREW T. BAXTER
United States Magistrate Judge

## REPORT-RECOMMENDATION

    This matter has been referred to me for Report and Recommendation by the

Honorable Glenn T. Suddaby, Chief United States District Judge.  In this civil rights

action, plaintiff alleges that, on several occasions between July 2014 and December

2014, multiple staff and officials at Auburn Correctional Facility ("Auburn") retaliated

against plaintiff for his work on the Inmate Liason Committee ("ILC"), by using

excessive force during pat frisks, sexually assaulting and humiliating him during strip

frisks, fabricating a weapons possession charge, and imposing disciplinary sanctions

against him. (Dkt. No. 1, Compl.).

    On April 12, 2016, Judge Suddaby dismissed a number of plaintiff's other

claims. (Dkt. No. 6)  The following claims survived initial review: (1) Eighth

Amendment excessive force, sexual assault, and/or failure to protect claims against

defendants Gifford[1], Chuttey, Manna[2], Gilmore, Zirbel[3], and Graham; (2) Fourth

Amendment unreasonable search claims against defendants Gilmore, Gifford, and

Chuttey; (3) Fourteenth Amendment due process claims against defendants Vasile,

Graham, and Venettozzi arising from a December 9, 2014 disciplinary hearing

determination and appeals therefrom; (4) First Amendment retaliation claims against

defendants Chuttey, Gifford, Manna, Gilmore, Connor, Steinberg, Cornell, and Vasile;

and (5) conspiracy claims against defendant Chuttey, Manna, Gifford, Gilmore, and

Vasile.  (Dkt. No. 6, at 40; Dkt. No. 8, at 3 n.2).

Presently before the court is the remaining defendants' motion for summary

judgment on all these claims pursuant to Fed. R. Civ. P. 56. (Dkt. No. 57).  Plaintiff has

responded in opposition to the motion, and defendants filed a reply memorandum of

law. (Dkt. Nos. 63, 64).  For the reasons set forth below, this court will recommend

granting the motion for summary judgment in part, and denying it in part.

## I.    **Summary Judgment**

Summary judgment is appropriate where there exists no genuine issue of material

fact and, based on the undisputed facts, the moving party is entitled to judgment as a

---

[1] In his complaint, plaintiff alternatively identified this correctional officer as "Greffin," "Giffin," or "Griffin" (Dkt. No. 6, at 4 n.3).  The parties now agree that he was referring to defendant Gifford. (Dkt. No. 57-4, Ex. A to Paquette Decl., at 41).

[2] In his complaint, plaintiff identified this correctional officer as "Mannon," (Compl. at 5).  In response to this motion, defense counsel reported that this individual's last name is spelled "Manna," so this court will adopt the correct spelling. (Def. Br. at 8 n.2).

[3] In his complaint, plaintiff identified this correctional officer as "Zeke." (Compl. at 5). Plaintiff advised the court prior to service of the summons that this defendant's name is actually Zirbel. (Dkt. No. 18).

matter of law.  Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006).  "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment.  *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial.  *Salahuddin v. Goord*, 467 F.3d at 273.  In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant.  *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

## II.   <u>Compliance with Local Rules</u>

As required under L.R. 7.1, defendants have filed a Statement of Material Facts. (Dkt. No. 169-1).  Although plaintiff has responded to the Statement of Material Facts filed by Defendants (Dkt. No. 63-2, "Pl.'s Statement of Disputed Factual Issues"), his

response does not follow the mandate of L.R. 7.1(a)(3). Under this rule, the opposing party's response to the movant's statement of material facts "shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises." Instead, plaintiff has submitted a list that does not correspond to the defendants' statement, and only identifies issues that plaintiff believes cannot be resolved on summary judgment. (Dkt. No. 63-2, at 2-6).

Where, as in this case, a party has failed to respond to the movant's statement of material facts in the manner required under L.R. 7.1(a)(3), the local rule provides that facts in the movant's statement will be accepted as true (1) to the extent they are supported by evidence in the record, and (2) the nonmovant, if proceeding pro se, has been specifically advised of the possible consequences of failing to respond to the motion. *See Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). However, the Second Circuit, acknowledging a court's broad discretion to determine whether to overlook a failure to comply with local rules, has held that "while a court is not required to consider what the parties fail to point out in their [local rule statements of material facts], it may in its discretion opt to conduct an assiduous review of the entire record even where one of the parties has failed to file such a statement." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (citation and internal quotation marks omitted).

Exercising this court's discretion, I will not withhold the leniency typically afforded pro se litigants at this juncture. Therefore, this report-recommendation is

4

based upon an assiduous review of the entire summary judgment record, including plaintiff's memorandum of law, his supporting affirmation, and the accompanying exhibits.

Plaintiff should not interpret this court's leniency with respect to this motion as approval of his disregard for the applicable local rules. This court reminds plaintiff that his pro se status is not a license to avoid the procedural requirements imposed on all civil litigants. *See Faretta v. Calif.,* 422 U.S. 806, 834 n.46 (1975) ("The right of self-representation is not a license . . . not to comply with relevant rules of procedural and substantive law.). Future pleadings that disregard the local rules may not be afforded this same leniency.

## III.   <u>Relevant Facts and Contentions</u>[4]

At all times relevant to the complaint, plaintiff was confined at Auburn, where he served as a representative on the ILC. (Compl. at 6). In this role, plaintiff collected complaints from the prison population and forwarded them to defendant Graham, who was Auburn Superintendent. (Dkt. No. 63, Pl. Decl., ¶ 4).

### A.     **July 25, 2014 Incident**

On July 13, 2014, plaintiff sent the monthly agenda for the upcoming July 30, 2014 ILC meeting to defendants Graham and Chuttey. (Compl. at 9). The first item on the agenda was discussion of an allegedly improper pat-frisk technique used by certain Auburn correctional officers, which involved "coming up behind inmates and grabbing

---

[4] For purposes of this motion, this court will view all ambiguities or inferences to be drawn from the facts in the light most favorable to plaintiff. *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citations omitted).

them by the wrist and forcing them to the wall and making them open their mouth."
(*Id*.)

On July 25, 2017, defendant Gifford entered plaintiff's cell, grabbed him by the
wrist, and "forcefully dragged [him] out [of his] cell and put [him] on the company
bars." (Pl. Decl. ¶ 9).  He was then taken for a urinalysis test, while unidentified
officers "vandalized" his cell. (*Id*.)  Plaintiff alleges that during this interaction,
defendant Gifford asked him, "your [*sic*] a I.L.C. rep.  Why Captain Chuttey messing
with you for?" (*Id*.; Compl. at 10).

## B.    July 30, 2014 Incidents

On July 30, 2014, plaintiff raised the inmate complaints about the pat-frisk
technique at the ILC meeting, and identified defendant Manna as one of the officers
who was violating DOCCS policy. (Pl. Decl. ¶ 10).  Defendant Graham and defendant
Chuttey were at the meeting.  After the ILC meeting that day, defendants Gifford,
Manna, and Gilmore "aggressively approached" plaintiff in the recreation yard, along
with three other unidentified correctional officers. (Pl. Decl. ¶ 11).  Defendant Gifford
grabbed plaintiff by the wrist, forcefully dragged him to the wall, and told plaintiff to
open his mouth. (Pl. Decl. ¶ 11; Compl. at 10).  He then roughly pat-frisked plaintiff.
(*Id*.)  Plaintiff alleges that defendant Manna and Gilmore threatened plaintiff when the
pat-frisk was finished.  According to plaintiff, defendant Manna told him, "We're doing
our job and protecting ourself [sic] just in case of a inmate [sic] try to attack us and you
just came here and you trying to change policies and that's going to cause a big problem
between you and us . . . I'll set you up with a weapon or write you up for assault on staff

and that won't look good at the Parole Board." (*Id.*)

A short time later, defendant Gilmore ordered plaintiff to leave the yard and escorted plaintiff into a small room located on C&D Block. (Pl. Decl. ¶ 12; Compl. at 10). Defendants Manna and Gilmore were already in the room, along with four other unidentified correctional officers. (Pl. Decl. ¶ 12; Compl. at 11). Defendant Gifford then ordered plaintiff to remove his clothes. (*Id.*) Plaintiff estimated that he stood naked for approximately ten minutes while defendants Manna, Gifford, and Gilmore made "sexual ribald comments and threats." (*Id.*) Plaintiff alleged that defendant Gifford repeatedly touched plaintiff's penis with his nightstick, and told plaintiff that "Your dick is real small for a blackman [sic]." (*Id.*)

While this was going on, defendant Gilmore ordered plaintiff to open his mouth six times, and laughed each time. (Pl. Decl. ¶ 13; Compl. at 11). When plaintiff complied with these orders, defendant Gilmore told plaintiff, "See. You don't have a problem opening your mouth." (*Id.*) Plaintiff interpreted this statement as a reference to the complaints that he raised during the ILC meeting. (Pl. Decl. ¶ 13). Defendant Manna was even more specific in referring to plaintiff's complaints about the pat-frisk policy, telling plaintiff that, "Captain Chuttey told us to conduct searches like that and we will [continue] to do so and you can't change shit. And if you file any grievance it will disappear and we will kill you in here." (Pl. Decl. ¶ 14; Compl. at 11).

In light of the threats to frame him for assault or to kill him, plaintiff did not file a grievance related to the July 25 or July 30 incidents. (Pl. Decl. ¶ 16). However, he did send letters to Governor Andrew Cuomo and the DOCCS Inspector General. (*Id.*)

He also reported the July 30 sexual assault to mental health staff, who provided the information to Auburn officials. (Pl. Decl. ¶ 17).

### C.    October 7, 2014 Incident

In September 2014, an investigator from the Inspector General interviewed plaintiff as well as defendants Chuttey, Manna, Gilmore, and Gifford. (Pl. Decl. ¶ 18; Compl. at 12).  At the September 29, 2014 ILC meeting, defendant Chuttey threatened to retaliate against plaintiff for complaining to the Inspector General, and for his continued presence on the ILC. (Pl. Decl. ¶ 20; Compl. at 12).

On October 7, 2014, defendant Gilmore stopped plaintiff for a pat-frisk. (Pl. Decl. ¶ 21; Compl. at 12-13).  Plaintiff alleges that defendant Gilmore grabbed plaintiff forcefully by the wrist, told him to open his mouth, and dragged plaintiff to the wall to assume a pat-frisk position. (Pl. Decl. ¶ 21; Compl. at 13)  While plaintiff was facing the wall, defendant Gilmore started "punching his [fists] together in an [intimidating] manner," while defendant Zirbel stood nearby and laughed. (*Id*.)  Defendant Gilmore then conducted the pat frisk in what plaintiff considered an "inappropriate manner" that included caressing his chest, and repeatedly groping plaintiff's genitals and buttocks. (*Id*.)  When plaintiff complained that the pat-frisk was being conducted in an inappropriate manner, defendant Gilmore warned him that he could receive a ticket for assault on staff, and that "[W]e do what we want because we're untouchable and I don't care what you tell I.G. about me, I'll still be here tomorrow touching on your sweet ass." (Pl. Decl. ¶ 22; Compl. at 13).

### D.    November 25, 2014 Incident

On November 14, 2014, plaintiff was reelected to a position on the ILC.  (Pl. Decl. ¶ 29; Compl. at 14).  On November 25, 2014, defendants Steinberg and Connors conducted a strip frisk of plaintiff. (Pl. Decl. ¶ 33; Compl. at 14-15).  Following the strip frisk, defendant Steinberg issued plaintiff a misbehavior report for weapons possession. (Pl. Decl. ¶ 33).  Defendant Steinberg reported that he found a gray knife made out of sharpened plastic in plaintiff's sock.  (Compl. at 15).  Plaintiff claimed that defendant Steinberg planted the weapon on him, and then told plaintiff "You overstepped your boundaries.  Didn't [defendant Chuttey] tell you not to run [for reelection to the ILC]?" (Compl. at 15).  Defendant Connors also told plaintiff, "You like to help these scumbugs with your ILC crap and inform on my officers . . . . Let [sic] see who's going to help you.  You should've listen to [Chuttey] when he told you not to run." (Pl. Decl. ¶ 33).  Plaintiff also alleges that defendants made a number of other self-incriminating statements in the days following the incident. (Pl. Decl. ¶ 35, 37-38).

### E.    December 2014 Disciplinary Hearing

Defendant Vasile presided over plaintiff's disciplinary hearing related to the weapons possession charge, and found him guilty on December 9, 2014. (Compl. at 17-23).  Plaintiff was sentenced to sixteen months in the special housing unit ("SHU") with a sixteen month loss of privileges, and twelve months of recommended good time loss. (Compl. at 23).  Defendant Graham and defendant Venettozzi denied plaintiff's subsequent appeals, but reduced his SHU confinement to five months. (Compl. at 24-25).

## IV.     Exhaustion of Administrative Remedies

### A.     Legal Standards

The Prison Litigation Reform Act, (PLRA), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action.  The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim.  *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004) (citing *Porter v. Nussle,* 534 U.S. 516, 532 (2002).  Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings.  *Id.* at 675.

The failure to exhaust is an affirmative defense that must be raised by the defendants.  *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004).  Defendants bear the burden of proving the affirmative defense of failure to exhaust.  *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules.  *Jones*, 549 U.S. at 218-19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)).  In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court.  548 U.S. at 90-103.

The grievance procedure in New York is a three-tiered process.  The inmate must

first file a grievance with the Inmate Grievance Resolution Committee ("IGRC").  N.Y.

Comp. Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b).  An adverse decision of the

IGRC may be appealed to the Superintendent of the Facility.  *Id*. § 701.5(c).  Adverse

decisions at the Superintendent's level may be appealed to the Central Office Review

Committee ("CORC").  *Id*. § 701.5(d).  The court also notes that the regulations

governing the Inmate Grievance Program encourage the inmate to "resolve his/her

complaints through the guidance and counseling unit, the program area directly

affected, or other existing channels (informal or formal) prior to submitting a

grievance."  *Id.* § 701.3(a) (Inmate's Responsibility).  There is also a special section for

complaints of harassment.  *Id*. § 701.8.  Complaints of harassment are handled by an

expedited procedure which provides that such grievances are forwarded directly to the

superintendent of the facility, after which the inmate must appeal any negative

determination to the CORC. *Id.* §§ 701.8(h) & (i), 701.5.

Until recently, the Second Circuit utilized a three-part inquiry to determine

whether an inmate had properly exhausted his administrative remedies.  *See Brownell v.

Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006) (citing *Hemphill v. State of New York*, 380

F.3d 680, 686 (2d Cir. 2004).  The *Hemphill* inquiry asked (1) whether the

administrative remedies were available to the inmate; (2) whether defendants' own

actions inhibiting exhaustion estops them from raising the defense; and (3) whether

"special circumstances" justify the inmate's failure to comply with the exhaustion

requirement.  *Id.*

The Supreme Court has now made clear that courts may not excuse a prisoner's

failure to exhaust because of "special circumstances." *Ross v. Blake*, __ U.S. __, 136 S. Ct. 1850, 1857 (June 6, 2016). "'[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.'" *Riles v. Buchanan*, 656 F. App'x 577, 580 (2d Cir. 2016) (quoting *Ross*, __ U.S. at __, 136 S. Ct. at 1857). Although *Ross* has eliminated the "special circumstances" exception, the other two factors in *Hemphill* – availability and estoppel – are still valid. The court in *Ross* referred to "availability" as a "textual exception" to mandatory exhaustion, and "estoppel" has become one of the three factors in determining availability. *Ross*, __ U.S. at __, 136 S. Ct. at 1858.

### B.    Application

#### 1.    July 25, 2014 Incident

Defendants argue that plaintiff failed to exhaust the DOCCS administrative grievance process for any of his claims associated with the July 25, 2014 pat-frisk. (Dkt. No. 57-2, "Def. Mem. of Law", at 23). Plaintiff admits that he did not file a grievance for this incident, but argues that he legitimately feared for his life if he pursued ordinary administrative remedies, due to defendants' threats. (Pl. Decl. ¶ 16).

Under *Ross*, threats or intimidating by prison employees may render administrative remedies unavailable. *Ross*, __ U.S. at __, 136 S. Ct. at 1860. The Second Circuit has stated that "[t]he test for deciding whether the ordinary grievance procedures were available must be an objective one: that is, would a 'similarly situated individual of ordinary firmness' have deemed them available." *Hemphill,* 380 F.3d 680, 688 (2d Cir. 2004). A "generalized fear of retaliation" is insufficient to excuse a failure

to exhaust. *See Smith v. Costello*, No. 9:15-CV-401 (BKS/DJS), 2017 WL 1155811, at

*4 (N.D.N.Y. March 3, 2017) (Rep't-Rec), *adopted*, 2017 WL 1155813 (N.D.N.Y.

March 27, 2017) (collecting cases).

Specific threats of retaliation may reasonably deter an inmate from filing a

grievance, particularly when the threats follow an assault. *See, e.g., Hemphill*, 380 F.3d

at 688 (remanding for determination of availability of administrative remedies where

officer threatened to retaliate against the plaintiff if he filed a complaint). Here, plaintiff

has alleged that he was sexually assaulted and threatened five days after the July 25,

2014 incident, and warned not to file any grievances. (Pl. Decl. ¶ 14; Compl. at 11).

The same correctional officer, defendant Gifford, was involved in both incidents.

Plaintiff has alleged more than a "generalized fear of retaliation" that raises a sufficient

question of material fact as to whether administrative remedies were available to him.

This question of fact is sufficient to overcome defendants' motion for summary

judgment on exhaustion grounds, with regard to the July 25, 2014 incident.

Defendants argue that plaintiff's alleged fears are inconsistent with his

correspondence to Governor Cuomo and DOCCS Commissioner Annucci, and his

complaints to mental health staff. (Def. Br. at 11). However, "threats or other

intimidation by prison officials may well deter a prisoner of 'ordinary firmness' from

filing an internal grievance, but not from appealing directly to individuals in positions of

greater authority within the prison system, or to external structures of authority . . . ."

*Hemphill,* 380 F.3d at 689. Therefore, plaintiff's attempts to circumvent the ordinary

grievance process do not necessarily contradict his claims that he feared that defendants

would follow through on threats to frame him for misconduct or cause him harm.

###    2.    July 30, 2014 Incident

Defendants also argue that plaintiff failed to exhaust his administrative remedies with respect to his Eighth Amendment claims arising from the July 30, 2014 incident. As described above, the alleged threats made by defendants during the strip frisk, and plaintiff's alleged fear for his safety, raise a sufficient question of fact as to whether administrative remedies were available to him. Therefore, this court recommends that defendants' motion for summary judgment on exhaustion grounds with regard to the July 30, 2014 incident be denied.

In addition, defendants' exhaustion argument ignores the amended DOCCS policy, effective May 15, 2014, that specifically excludes sexual abuse and sexual harassment complaints from the three-tiered grievance process. *See Henderson v. Annucci*, No. 14-CV-445A, 2016 WL 3039687, at *3-4 (W.D.N.Y. March 14, 2016) (summarizing amended DOCCS policy). Plaintiff included a copy of DOCCS Directive 4040, as an exhibit to his response to this motion. (Dkt. No. 63-3, at 50-67). That exhibit, although dated January 20, 2016, includes the same language quoted in *Henderson*:

> The Department has zero tolerance for sexual abuse and sexual harassment. Consistent with this policy and the Prison Rape Elimination Act (PREA) Standards (28 C.F.R. § 115.52(a)), **an inmate is not required to file a grievance concerning an alleged incident of sexual abuse or sexual harassment to satisfy the Prison Litigation Reform Act (PLRA) exhaustion requirement** (42 U.S.C. § 1997e (a)) before bringing a lawsuit regarding an allegation of sexual abuse as long as the matter was reported as set forth below. For purposes of PREA Standards (28 C.F.R. § 115.52)

and the exhaustion requirement, any allegation concerning an incident of sexual abuse or sexual harassment (see Department Directives #4027A, "Sexual Abuse Prevention & Intervention - Inmate-on-Inmate," and #4028A, "Sexual Abuse Prevention & Intervention - Staff-on-Inmate") shall be deemed exhausted if official documentation confirms that:

> (1) An inmate who alleges being the victim of sexual abuse or sexual harassment reported the incident to facility staff; in writing to Central Office staff; to any outside agency that the Department has identified as having agreed to receive and immediately forward inmate reports of sexual abuse and sexual harassment to agency officials under the PREA Standards (28 C.F.R. § 115.51(b)); or to the Department's Office of Special Investigations; or

> (2) A third party reported that an inmate is the victim of sexual abuse and the alleged victim confirmed the allegation upon investigation.

(*Id*. at 52) (emphasis added).

Plaintiff's response to this motion includes mental health treatment notes documenting that plaintiff "was seen on a referral after he wrote a letter to MHU alleging that he was sexually assaulted." (Dkt. No. 63-3, at 42). The letter was received by MHU on August 1, 2014, and indicates that the watch commander "was notified on that date per PREA regulations." (*Id*.) Those notes certainly suggest that "official documentation" confirms that plaintiff reported the July 30, 2014 sexual assault to Auburn facility staff, raising an additional question of fact with regard to exhaustion. Therefore, this court finds that there is an additional ground to recommend denial of defendants' motion for summary judgment on exhaustion grounds with respect to the July 30, 2014 sexual assault claim. Because DOCCS created this exception solely for sexual abuse and sexual harassment claims, plaintiff's complaint to mental health staff

15

would not exhaust other claims arising from the July 30, 2014 incident, such as an Eighth Amendment excessive force claim. Those claims would still be subject to the three-tiered grievance process, unless it was unavailable, as described above.

### 3.    October 7, 2014 Incident

With regard to the October 7, 2014 incident, defendants admit that plaintiff exhausted the administrative grievance process with respect to his claims against defendant Gilmore, who performed the pat-frisk. (Dkt. No. 57-12, Hale Decl., Ex. B.) Defendants argue, however, that plaintiff never mentioned defendant Zirbel in any of the grievance documents, and thus did not exhaust his claim that defendant Zirbel failed to intervene. (Def. Mem. of Law at 18).

This argument is not persuasive. A grievant is not required to identify the parties against whom he is grieving, but he is required to "provide a specific description of the problem." *Espinal v. Goord*, 558 F.3d 119, 127 (2d Cir. 2009) (citing N.Y. Comp. Codes R. & Regs., tit. 7 § 701.7(a)(1)). The PLRA's exhaustion requirement requires that prison officials be afforded the time and opportunity to address a complaint internally. "In order to exhaust . . . inmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures." *Johnson*, 380 F.3d at 697 (finding the PLRA exhaustion requirement was "not dissimilar to the rules of notice pleading"). Therefore, the relevant question for the court is "whether [the] plaintiff's grievance sufficiently alerted the prison officials that he was alleging some wrongdoing beyond that alleged against the individual or individuals specifically named in the grievance." *Peele v. Donah*, Case No. 9:15-CV-

16

317 (GTS/TWD), 2016 WL 4400473, at *5 (N.D.N.Y. June 14, 2016) (citation omitted).

In his grievance, plaintiff identified the time and location of defendant Gilmore's pat-frisk. (Dkt. No. 57-12, Hale Decl., Ex. B at 5). As a result of the grievance, the matter was forwarded to the Inspector General's office for further review and investigation. (*Id*. at 6). At the time of the March 4, 2015 CORC decision, the Inspector General's case was still open. (*Id*. at 2). Based on the documents filed in connection with this motion, this court cannot conclude that officials with DOCCS or Auburn had no opportunity to investigate whether any other correctional officers, such as defendant Zirbel, witnessed and/or could have intervened in the alleged sexual assault. Therefore, this court recommends denial of defendant Zirbel's motion for summary judgment on exhaustion grounds.

### 4.    November 25, 2014 Incident and December 2014 Hearing

Defendants contend that plaintiff's failure to exhaust the three-tiered grievance process precludes claims related to the November 24, 2014 incident and the resulting disciplinary hearing on December 9, 2014. However, the administrative grievance process is inapplicable to plaintiff's Fourteen Amendment due process claims against defendants Vasile, Graham, and Venettozzi that adverse witnesses were coached prior to their testimony; that favorable evidence was suppressed; that plaintiff was not allowed to call all of his witnesses; and that the hearing officer was biased. (Compl. at 17-23). Complaints about the handling of a disciplinary hearing by corrections officials are non-grievable under applicable regulations because there is a separate administrative appeal process for disciplinary actions. N.Y. Comp. Codes R. & Regs., tit. 7 § 701.3(e)(1);

*Davis v. Barrett*, 576 F.3d 129, 132 (2d Cir. 2009). Plaintiff has demonstrated that he appealed the hearing determination to defendant Graham, and appealed the superintendent's determination to defendant Venettozzi. (Dkt. No. 63-3, at 140, 145-174). Plaintiff therefore properly exhausted his administrative remedies with respect to his due process claims, by appealing the result of each hearing. *Davis*, 576 F.3d at 132-33.

The ordinary grievance process applied to all of plaintiff's other claims related to the November 25, 2014 incident and the December 2014 disciplinary hearing. *See Dabney v. Pagano*, 604 F. App'x 1, 4 (2d Cir. 2015). Plaintiff commenced this process, but did not complete it. For example, plaintiff filed Grievance Number AUB-66310-14 on November 28, 2014, alleging that defendants Gilmore, Cornell, and Steinberg planted a weapon on him in retaliation for prior complaints. *See* Dkt. No. 57-13, Hale Decl., Ex. C at 1. On the grievance form, plaintiff wrote, "It don't matter, they already violated my rights and I'm heading straight into federal court. Just send me back a copy of this complaint." (*Id.*) DOCCS records do not show that plaintiff completed the three-tiered process for this grievance. (Dkt. No. 57-10, Hale Decl., ¶ 13).

Plaintiff also filed Grievance Number AUB-66332-14, alleging that defendants Chuttey, Gilmore, Steinberg, Cornell, and Connors conspired to plant the knife in retaliation for his previous complaints. (Dkt. No. 63-3, at 113-114). This grievance was dated December 1, 2014, and stamped received by Auburn I.G.R.C. on December 8, 2014. (*Id.* at 113). At the start of his disciplinary hearing on those charges, plaintiff filed Grievance Number AUB-66331-14, alleging that his hearing officer, defendant

Vasile, had conspired with Chuttey, Gilmore, Steinberg, Cornell, and Connors to find him guilty of the weapons charge. (Dkt. No. 63-3, at 115). This grievance was dated December 2, 2014, and stamped received by Auburn I.G.R.C. on December 8, 2014. (*Id*.)

Given the nature of plaintiff's allegations, both conspiracy grievances were referred directly to defendant Graham, as superintendent, in accordance with DOCCS regulations. N.Y. Comp. Codes R. & Regs., tit. 7 § 701.8. (Pl. Decl. ¶ 42). Plaintiff concedes that, pursuant to the same regulations, defendant Graham had twenty-five days to respond to the grievance. (*Id*.) Because the time to respond begins to run from the date that the grievance is received, the response was due by January 2, 2013. *See* N.Y. Comp. Codes R. & Regs., tit. 7 § 701.8 (f). On December 23, 2014, before the superintendent's time to respond to either grievance had expired, plaintiff sent a letter requesting that the two matters be appealed to CORC. (Dkt. No. 63-3, at 116). On December 28, 2014, plaintiff sent his own letter to CORC, requesting that it hear his appeals on Grievances Number AUB-66331-14 and AUB-66332-14 for exhaustion purposes. (*Id*. at 117-118). CORC acknowledged this request but advised plaintiff to utilize the standard appeal procedure through his IGP supervisor. (*Id*. at 121). Defendant Graham issued his grievance determinations on January 7, 2015, and found that there was no evidence to support plaintiff's allegations. (*Id*. at 123). There is no indication that plaintiff appealed the Superintendent's actual determinations.

By prematurely filing his appeals due to the Superintendent's perceived non-response to his grievances, plaintiff did not properly exhaust his administrative

remedies. *See, e.g., Aikens v. Jones*, No. 12-CIV-1023 (PGG), 2015 WL 1262158, at *4 (S.D.N.Y. March 19, 2015) (appeal was not properly submitted to superintendent because it was filed before IGRC's time to respond had expired). An untimely or otherwise procedurally defective administrative appeal does not satisfy the PLRA's exhaustion requirements. *Aiken*, 2015 WL 1262158, at *4 (collecting cases). Plaintiff's letter to CORC also did not comply with DOCCS regulations. *See Bennett v. Wesley*, No. 11 Civ. 8715 (JMF), 2013 WL 1798001, at *5 (S.D.N.Y. April 29, 2013) (granting defendants summary judgment where plaintiff attempted to appeal by filing a letter, and did not use the proper appeal form).

Plaintiff, who has expressed his familiarity with the DOCCS grievance process, has not demonstrated that the administrative process was confusing or unavailable to him with respect to these claims. *See Giano*, 380 F.3d at 676, 679 (excusing failure to file a grievance regarding retaliation claims because inmate reasonably misinterpreted DOCCS regulations to mean that his only administrative recourse was to appeal his disciplinary conviction); *see also Reynoso v. Swezey*, 238 Fed. Appx. 660, 663 (2d Cir. 2007) (where plaintiff filed a grievance with respect to the retaliation claim, but failed to appeal the denial to CORC, his failure to exhaust was not excused in light of evidence of his awareness that the grievance process was the appropriate administrative remedy). Therefore, this court recommends granting defendants' summary judgment motion with regard to plaintiff's claims related to the November 27, 2014 incident and the December 7, 2014 disciplinary hearing for failure to exhaust administrative remedies, except for

the remaining Fourteenth Amendment due process claims described above.[5]

## V.    Dismissal for Failure to State a Claim

### A.    Legal Standards

In addition to their exhaustion arguments, defendants have also argued that plaintiff has not stated constitutional claims for relief.  Because many of the same legal standards apply, I will summarize the general analysis for these type of claims at the outset.  I will then address the specific claims arising from each incident.

### 1.    Excessive Force

Inmates enjoy Eighth Amendment protection against the use of excessive force, and may recover damages under 42 U.S.C. § 1983 for a violation of those rights. *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992).  To sustain a claim of excessive force, a plaintiff must still establish the objective and subjective elements of an Eighth Amendment claim.  *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999).

In order to satisfy the objective element of the constitutional standard for excessive force, a defendant's conduct must be "'inconsistent with the contemporary standards of decency.'"  *Whitely v. Albers*, 475 U.S. 312, 327 (1986) (citation omitted); *Hudson*, 503 U.S. at 9.  The malicious use of force to cause harm constitutes a per se Eighth Amendment violation, regardless of the seriousness of the injuries.  *Blyden*, 186 F.3d at 263 (citing *Hudson*, 503 U.S. at 9).  "The Eighth Amendment's prohibition of

---

[5] Judge Suddaby had previously dismissed plaintiff's due process claim that he was denied adequate employee assistance during the December 7, 2014 disciplinary hearing. (Dkt. No. 6, at 23).

'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (citations omitted). "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" *Sims*, 230 F.3d at 22 (citation omitted).

The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." *Id*. at 21 (citation omitted). The Supreme Court has recently re-emphasized that the "core judicial inquiry" is not whether a certain quantum of injury was sustained, but rather whether the force was applied in a good faith effort to restore discipline, or whether it was applied maliciously to cause harm, regardless of the seriousness of the injury. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).

In determining whether defendants acted in a malicious or wanton manner, the Second Circuit has identified five factors to consider: the extent of the injury and the mental state of the defendant; the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response." *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003). The extent of the injury may be considered as one factor in determining whether the use of force could plausibly have been thought "necessary" in a particular situation. *Wilkins*, 559 U.S. at 40. The extent of the injury may also give some indication of the amount of force applied and may ultimately be considered in determining damages if appropriate. *Id.*

22

### 2.    Sexual Assault

"Because sexual abuse of a prisoner by a corrections officer may constitute serious harm inflicted by an officer with a sufficiently culpable state of mind, allegations of such abuse are cognizable as Eighth Amendment claims." *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir.1997).  "A corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate, violates the Eighth Amendment." *Crawford v. Cuomo*, 796 F.3d 252, 257 (2d Cir.2015). "[A] single incident of sexual abuse, if sufficiently severe or serious, may violate an inmate's Eighth Amendment rights no less than repetitive abusive conduct." *Id*. However, allegations of verbal threats of sexual assault are not sufficient to state a constitutional violation under 1983.  *See Jones v. Rock*, No. 9:12–CV–0447 (NAM/TWD), 2013 WL 4804500, at *19, n. 10 (N.D.N.Y. Sept. 6, 2013) (finding allegations that the defendant threatened sexual assault, without allegations of actual abuse, failed to state a cognizable claim under 1983).

### 3.    Failure to Protect

In order to state an Eighth Amendment claim for failure to protect an inmate, the plaintiff must show that he was incarcerated under conditions posing a substantial risk of serious harm, *and* prison officials acted with deliberate indifference to that risk and the inmate's safety.  *Farmer v. Brennan*, 511 U.S. 825, 836 (1994).  The plaintiff must show that prison officials *actually knew of and disregarded* an excessive risk of harm to the inmate's health and safety.  *Id.* at 837.  The defendant must be aware of the facts from

which the inference can be drawn that a substantial risk of serious harm exists, and the defendant must also draw that inference. *Id.*

### 4.    Unreasonable Body Search

While inmates do not retain the full range of constitutional rights that unincarcerated individuals enjoy, they do retain "some Fourth Amendment rights upon commitment to a correctional facility." *Bell v. Wolfish*, 441 U.S. 520, 558-60 (1979). Courts assessing an inmate's claim that officers infringed his or her Fourth Amendment rights must first determine whether the inmate has exhibited "an actual, subjective expectation of bodily privacy;" and second, "whether the prison officials had sufficient justification to intrude on [the inmate's] fourth amendment rights." *Covino v. Patrissi*, 967 F.2d 78 (2d Cir. 1992).

In each case, "[t]he test of reasonableness under the Fourth Amendment requires a balancing of the need for the particular search against the invasion of the personal rights that the search entails." *Bell*, 441 U.S. at 559. As the Second Circuit recently reiterated, "inmates retain a limited right of bodily privacy under the Fourth Amendment." *Harris v. Miller*, No. 14-1957, 2016 WL 963904, at *10 (2d Cir. Mar. 15, 2016).

Thus, where an isolated search is challenged as unreasonable, "courts typically apply the standard set forth in [*Bell*]" in determining the reasonableness of the search. *Harris*, 2016 WL 963904 at *5, 10 (courts should assess reasonableness in light of the four Bell factors: "(1) the scope of the intrusion; (2) the manner in which it was conducted; (3) the justification for initiating it; and (4) the place in which it was

conducted.").

In some cases, an inmate's Eighth Amendment right to be free from cruel and unusual punishment may be implicated by the search. *Harris*, 2016 WL 963904, at *10. To state a cognizable Eighth Amendment claim, the plaintiff must allege that the defendant acted with a subjectively culpable state of mind, and that the conduct was objectively "harmful enough" or "sufficiently serious" to reach constitutional dimensions. *Id*. at *10-11 (citing *Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015)).

### 5.    Retaliation

In order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating factor for "adverse action" taken against him by defendant. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003).  The Second Circuit has defined "adverse action" in the prison context as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'"  *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004) (citations omitted).  The plaintiff must establish a causal connection between the protected conduct or speech and the adverse action.  *Id.* at 380.  The court must keep in mind that claims of retaliation are "easily fabricated" and "pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration."  *Bennett*, 343 F.3d at 137 (citation omitted).  Accordingly, plaintiff must set forth non-conclusory allegations to sustain a retaliation claim.  *Bennett*, 343 F.3d at 137.  Participation in the grievance

process by an inmate is clearly protected conduct in the context of a retaliation claim.

*Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 367 & n. 21 (S.D.N.Y. 2011) (collecting

cases).

### 6.    Due Process

To begin a due process analysis relating to prison disciplinary proceedings, the

court must determine whether plaintiff had a protected liberty interest in remaining free

from the confinement that he challenges, and then determine whether the defendants

deprived plaintiff of that liberty interest without due process.  *Giano v. Selsky*, 238 F.3d

223, 225 (2d Cir. 2001).  In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Supreme

Court held that although states may create liberty interests for inmates that are protected

by due process, "these interests will be generally limited to freedom from restraint

which, while not exceeding the sentence in such an unexpected manner as to give rise to

protection by the Due Process Clause of its own force . . . , nonetheless imposes atypical

and significant hardship on the inmate in relation to the ordinary incidents of prison

life."

The Second Circuit has explicitly avoided a bright line rule that a certain period of

confinement in keeplock or a segregated housing unit automatically gives rise to due

process protection.  *See Sims v. Artuz*, 230 F.3d 14, 23 (2d Cir. 2000); *Colon v. Howard*,

215 F.3d 227, 234 (2d Cir. 2000).  Instead, cases in this circuit have created guidelines

for use by district courts in determining whether a prisoner's liberty interest was

infringed.  *Palmer v. Richards*, 364 F.3d 60, 64-66 (2d Cir. 2004).

A confinement longer than an intermediate one, and under "normal SHU

conditions" is "a sufficient departure from the ordinary incidents of prison life to require

procedural due process protections under *Sandin*." *Colon*, 215 F.3d at 231 (finding that

a prisoner's liberty interest was infringed by 305-day confinement). "Where the plaintiff

was confined for an intermediate duration–between 101 and 305 days– . . . a district

court must "make a fact-intensive inquiry," . . . examining "the actual circumstances of

SHU confinement" in the case before it . . . ." *Palmer v. Richards*, 364 F.3d at 64-65

(citations omitted). Shorter confinements under normal SHU conditions may not

implicate a prisoner's liberty interest. However, "SHU confinements of fewer than 101

days could constitute atypical and significant hardships if the conditions were more

severe than the normal SHU conditions . . . or a more fully developed record showed

that even relatively brief confinements under normal SHU conditions were, in fact,

atypical." *Palmer v. Richards*, 364 F.3d at 65 (citations omitted).

### B.    Application

#### 1.    July 25, 2014 Incident

Although plaintiff considered the July 25, 2014 search of his cell to be retaliatory,

and his urinalysis test to be "illegal," he also concedes that ". . . I have no constitutional

protection in retaliatory cell searches or urine testing." (Pl. Decl. ¶ 19). Instead, plaintiff

argues that his constitutional rights were violated when defendant Gifford "rushed up in

his cell and grabbed the plaintiff by the wrist and forcefully dragged the plaintiff out his

cell [sic] and put him on the company bars," at the direction of defendant Chuttey.

(Compl. at 10).

To the extent that plaintiff is claiming that excessive force was used to remove

him from his cell on July 25, 2014, this court recommends that defendant Gifford be granted summary judgment. Plaintiff's description of defendant Gifford's actions reflect a *de minimis* use of force, and plaintiff has not alleged any injury that resulted from the forcible removal from his cell.

Although plaintiff has demonstrated temporal proximity between the cell search and defendant Chuttey's alleged receipt of the ILC agenda, this court also recommends that defendants Gifford and Chuttey be granted summary judgment as to plaintiff's retaliation claims arising from the July 25, 2014 incident. None of the alleged mistreatment rises to the level of an adverse action. As discussed above, the level of force used to remove plaintiff from his cell was *de minimis*. In addition, a single urinalysis test does not rise to the level of an adverse action that would deter an inmate from asserting his rights. *See Bumpus v. Canfield*, 495 F. Supp. 2d 316, 327 (W.D.N.Y. 2007) ("urine tests are a fact of prison life . . . , and I do not find that one urine test would chill a prisoner of ordinary firmness from filing grievances."). Likewise, retaliatory cell searches are not actionable under § 1983. *See Walker v. LaValley*, No. 9:12-CV-807 (TJM/CFH), 2014 WL 4744735, at *14 (N.D.N.Y. Sept. 23, 2014) (collecting cases). Plaintiff has not alleged that any of his property was confiscated or damaged during the search. *See Toliver v. City of New York,* No. 10-CIV-5806, 2013 WL 6476791, at *7 (S.D.N.Y. Dec. 10, 2013) (the confiscation or destruction of property may give rise to a retaliation claim). Therefore, even if plaintiff could show a retaliatory motive, he has not demonstrated an adverse action occurred on July 25, 2014 that would support a retaliation claim.

### 2. July 30, 2014 Incidents

Plaintiff has alleged that defendant Gifford used excessive force when he conducted his initial pat-frisk on July 30, 2014 in a rough manner. (Pl. Decl. ¶ 11; Compl. at 10). He also alleges that, a short time later, plaintiff was forced to strip off his clothes and stand naked while defendant Gifford repeatedly touched plaintiff's genitalia with a nightstick, and mocked him along with defendants Manna and Gilmore. (Pl. Decl. ¶ 12-15; Compl. at 11-12). During this purported strip frisk, the defendants made statements indicating that plaintiff was being mistreated in retaliation for his complaints about Auburn's pat frisk policies. (Pl. Decl. ¶ 13-14; Compl. at 12). Although defendant Chuttey was not present during these incidents, plaintiff contends that defendant Chuttey had ordered the abuse. Defendants contend that none of these allegations state a § 1983 claim.

Although plaintiff described the initial pat frisk as "rough," his description does not rise to the level of harm or malice contemplated by the Eighth Amendment. *See Boddie v. Schneider*, 105 F.3d 857, 861 (2d Cir. 1997) (a "small number of incidents in which [the inmate] allegedly was verbally harassed, touched, and pressed against without his consent" were not, in isolation nor taken together, objectively serious enough to invoke the protections afforded under the Eighth Amendment); *Caldwell v. Crossett*, No. 9:09–CV–576 (LEK/RFT), 2010 WL 2346337, at *3 (N.D.N.Y. May 24, 2010) (claim that corrections officer grabbed plaintiff's testicles during a pat-frisk causing serious pain around his groin area failed to allege a violation of the Eighth Amendment based upon claims of sexual abuse or excessive force). Therefore, this court

recommends that defendant Gifford's motion for summary judgment be granted with respect to the July 30, 2014 excessive force claim.

Defendants Gifford, Manna, and Gilmore have not shown that they are entitled to summary judgment on any of plaintiff's other claims arising from the July 30, 2014 incident.[6]  A correctional officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to humiliate the inmate, violates the Eighth Amendment. *Crawford*, 796 F.3d 252, 257 (2d Cir. 2015).  Taking plaintiff's allegations as true for the purpose of this motion, defendant Gifford's repeated touching of plaintiff's genitalia with his nightstick and mocking comments would serve no other purpose but to humiliate plaintiff.  A strip search which was intended to humiliate or harass plaintiff would violate even the limited Fourth Amendment protections afforded inmates.  Likewise, if defendants Manna and Gilmore were in the room and witnessed such abusive actions by defendant Gifford, their failure to intervene gives rise to a constitutional claim.[7]  The alleged statements made during the incident also support plaintiff's contention that the correctional officers

---

[6] This court notes that plaintiff has not alleged any physical injury resulting from the July 30, 2014 incidents, but claimed that he suffered "psychological pain and anguish." (Compl. at 36-37).  The PLRA prohibits compensatory damage awards for an inmate's mental or emotional injury without a prior showing of physical injury. 42 U.S.C. § 1997e(e).  Plaintiff may still recover nominal or punitive damages for these claims. *Thompson v. Carter*, 284 F.3d 411, 417-18 (2d Cir. 2002).

[7] In this case, plaintiff alleges that defendants Manna and Gilmore not only witnessed the sexual abuse on July 30, 2014, but participated in mocking and taunting plaintiff.

were retaliating against him for complaining about Auburn's pat-frisk practices.[8]

However, this court recommends granting defendant Chuttey's motion for summary judgment on plaintiff's retaliation claim related to the July 30, 2014 incident. Defendant Chuttey was not present at any point during the alleged pat frisk or sexual assault on July 30, 2014. The complaint includes a statement by defendant Manna that "Captain Chuttey" had instructed them to conduct pat-frisks by grabbing inmates by the wrist and forcing them to open their mouth. (Pl. Decl.¶ 14). Plaintiff has not offered any support for his conclusion that defendant Chuttey ordered, or was even aware of, the alleged retaliatory assault. Plaintiff's speculative conclusion that it must have been ordered by defendant Chuttey is insufficient to survive a motion for summary judgment.

### 3.    October 7, 2014 Incident

Plaintiff has alleged that defendant Gilmore used excessive force and sexually assaulted him during a pat-frisk on October 7, 2014, when plaintiff was leaving the A-block at Auburn. (Pl. Decl. ¶ 21; Compl. at 13). He further alleged that defendant Zirbel witnessed this mistreatment and did not intervene. (*Id.*) Both defendant Gilmore and defendant Zirbel have moved for summary judgment for failure to state a claim.

This court recommends that both defendants' motions for summary judgment be

---

[8] In their motion, defendants generally raised qualified immunity as an additional ground for summary judgment. (Def. Br. at 41). The doctrine of qualified immunity shields government officials from liability for civil damages when their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To the extent that defendants are invoking qualified immunity with respect to the July 30, 2014 incidents, this court recommends denial of summary judgment on that ground as well.

granted, with respect to the October 7, 2014 incident.  Plaintiff's description of the pat-frisk does not rise to the level of excessive force or sexual assault.  *See Boddie*, 105 F.3d at 861; *Caldwell*, 2010 WL 2346337, at *3.  Plaintiff has also not supported his conclusion that the pat-frisk, which took place as plaintiff was moving between cell blocks, had no penological purpose and was instead intended to gratify defendant Gilmore's sexual desire or humiliate plaintiff.  *See Crawford*, 796 F.3d at 257.  Because plaintiff has not shown that defendant Gilmore's action rose to the level of a constitutional violation, it follows that plaintiff has not stated a claim against defendant Zirbel for failure to intervene.

### 4.    December 2014 Disciplinary Hearing (Due Process Claims)

Defendant Vasile sentenced plaintiff to sixteen months in the Special Housing Unit ("SHU), but defendant Graham reduced this sentence on appeal to five months SHU confinement. (Dkt. No. 68-3, at 140).  Given the intermediate duration of ultimate disciplinary sentence, a fact-intensive inquiry is necessary to determine whether a liberty interest arose from "atypical or significant" hardships imposed while plaintiff was in SHU.  *Palmer*, 364 F.3d at 64-65.

In plaintiff's response to the defendants' motion for summary judgment, he outlines the deprivations that he allegedly suffered for the time that he was in SHU, at both Auburn and Upstate. (Pl. Decl. ¶¶ 71-77).  While housed in Auburn SHU, plaintiff was housed next to a mentally ill inmate who continuously banged on his wall, preventing plaintiff from sleeping. (*Id.* ¶ 71).  This inmate also threw feces into plaintiff's cell, causing him to vomit. (*Id.*)  During the approximately fifty days that

plaintiff was housed in Auburn SHU, he was unable to exercise and developed back pain. (*Id.* ¶ 72). When he was transferred to Upstate SHU, he was not allowed to have his reading glasses, which left plaintiff unable to read legal work, mail, and other written material. (*Id.* ¶ 74). Plaintiff was denied a pillow, which caused his neck to stiffen up and exacerbated his back pain. (*Id.* ¶ 75). Plaintiff also alleged that the conditions at Upstate SHU, which he described as "the worst SHU ever made," caused him to become depressed and consider suicide. (*Id.* ¶¶ 73-74). His SHU confinement also made him ineligible for a selective college program available for inmates. (Id. at ¶ 77).

As defendants point out in their reply, many of these alleged deprivations are "normal SHU conditions." (Dkt. No. 69 at 2). *See Smith v. Costello*, No. 9:15-CV-401, 2017 WL 1155811, at *6 (N.D.N.Y. Mar. 3, 2017) (discussing "normal" SHU conditions including limited access to personal materials, personal hygiene items, exercise, mail, legal documents, and programs) (Rep't-Rec.), *adopted*, 2017 WL 1155813 (Mar. 27, 2017); *Jackson v. Goord*, No. 06-CV-6172, 2011 WL 4829850, at *14 (noise that made it difficult to sleep was not an atypical and significant hardship). Others, including those the alleged impacts on plaintiff's physical and mental health, may or may not be "normal" for SHU. Defendants have not offered any evidence regarding SHU conditions at Auburn or Upstate. Therefore, there is an outstanding question of fact as to whether defendants deprived plaintiff of a liberty interest.

This outstanding question of fact does not preclude summary judgment for defendants in this case. Even assuming that plaintiff had a liberty interest, a review of the record demonstrates that plaintiff received adequate due process at his December 7,

2014 hearing. Plaintiff's due process challenge relies upon four allegations against defendant Vasile, that he: (1) refused to allow witness testimony favorable to plaintiff; (2) suppressed evidence favorable to plaintiff; (3) coached witnesses to elicit false testimony; and (4) was generally biased against plaintiff and had pre-decided his guilt. (Pl. Decl. ¶¶ 52-66). None of these allegations are supported by the record.

Although due process includes a right to call witnesses, this right is not unfettered. *Alicea v. Howell*, 387 F. Supp. 2d 227, 234 (W.D.N.Y. 2005) (citing *Ponte v. Real*, 471 U.S. 491, 495 (1985)). This right may be limited for security reasons, to keep a hearing within reasonable limits, or on the basis of irrelevance or lack of necessity. *Id*. (citing, *inter alia, Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 (2d Cir. 1991) (a hearing officer does not violate due process by excluding irrelevant or unnecessary testimony or evidence)). An inmate's due process right to witnesses is only violated when a prison hearing officer refuses to interview witnesses without assigning a reason "logically related to preventing undue hazards to 'institutional safety or correctional goals.'" *Ponte*, 471 U.S. at 497.

At the December 2014 hearing, defendant Vasile questioned sixteen witnesses, including inmates. When he excluded witnesses requested by plaintiff, defendant Vasile provided plaintiff an explanation for his determination. For example, he explained that he had excluded the testimony of one correctional officer upon learning that he had not been in the vicinity of the incident. (Dkt. No. 57-9, at 142). He also excluded two inmate witnesses who refused to testify. (*Id*., at 140). Likewise, defendant Vasile denied plaintiff's request for testimony from an investigator with the Inspector General's office

when he determined that this unidentified individual was not present during the incident. (*Id*., at 138).  This exclusion of testimony deemed irrelevant or unnecessary does not violate due process.  *Kawalinski v. Morse*, 201 F.3d 103, 109 (2d Cir. 1999) (citing *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 (2d Cir. 1991)); *Chavis v. vonHagn*, No. 02-CV-119, 2009 WL 236060, at *62 (W.D.N.Y. Jan. 30, 2009).

Plaintiff's argument that defendant Vasile should have reviewed security video leading up to the incident does not raise a due process issue.  As he explained during the hearing, defendant Vasile concluded that there was no relevant video footage available. (Dkt. No. 57-9, at 16).  Instead, defendant Vasile heard testimony from sixteen witnesses, including inmates and correctional officers.  The constitutional standard for sufficiency of evidence in a prison disciplinary hearing is whether there is "some" or "a modicum" of evidence to support the hearing officer's determination.  *Sira v. Morton*, 380 F.3d 57, 76 (2d Cir. 2004) (citing *Superintendent v. Hill*, 472 U.S.445, 454 (1985)).  As the hearing officer, defendant Vasile was authorized to make an independent assessment of all the evidence.  *See Lewis v. Johnson*, No. 9:08-CV-482 (TJM/ATB), 2010 WL 3785771, at *11 n.25 (N.D.N.Y. Aug. 5, 2010) ("the Second Circuit has required that a hearing examiner make an independent assessment of the credibility of certain sources of evidence at a prison disciplinary hearing"), (Rep.-Rec.)*, adopted*, 2010 WL 3762016, at *1 (N.D.N.Y. Sept. 20, 2010).

Plaintiff's allegations that defendant Vasile coached witnesses are based entirely on his speculation that the hearing officer, who knew many of the correctional officer witnesses, met with them outside plaintiff's presence.  Plaintiff's own subjective belief

that defendant Vasile was biased is insufficient to create a genuine issue of material fact. *Francis v. Coughlin*, 891 F.2d 43, 47 (2d Cir.1989); *Clyde v. Schoellkopf*, 714 F. Supp. 2d 432, 437-38 (W.D.N.Y. 2010).  It is well settled "that prison disciplinary officers are not held to the same standard of neutrality as adjudicators in other contexts." *Allen v. Cuomo*, 100 F.3d at 259.  "The degree of impartiality required of prison officials does not rise to the level of that required of judges generally." *Id.*

The record demonstrates that plaintiff was afforded advance written notice of the charges against him, and an opportunity to call witnesses and present documentary evidence. *Sira*, 380 F.3d at 69.  At the close of the hearing, defendant Vasile issued a written statement explaining that he relied upon the written misbehavior report, Auburn correctional officer testimony, and confidential testimony from mental health staff to make his determination. (Dkt. No. 57-9, at 147-49).  Vasile also explained that he discounted testimony favorable to plaintiff that was offered by four inmates, because the statements conflicted with each other. (*Id.* at 148). Defendant Vasile's determination at the December 2014 hearing was thus supported by "some" evidence, and therefore satisfied due process.  Accordingly, this court recommends that defendants' motion for summary judgment as to plaintiff's due process claims against defendant Vasile be granted.  Summary judgment on these claims should also be granted with respect to defendants Graham and Venettozzi, because their only involvement was to review plaintiff's appeals of a disciplinary hearing that this court has found comported with due process.

## V.   **Personal Involvement (Defendant Graham)**

### A.   **Legal Standards**

Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and respondeat superior is an inappropriate theory of liability. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003).  In *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to individual liability.

A supervisory official is personally involved if that official directly participated in the infraction. *Id.*  The defendant may have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id.*  Personal involvement may also exist if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id.*  Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id.  See also Iqbal v. Hasty*, 490 F.3d 143, 152–53 (2d Cir. 2007) (citing *Colon v. Coughlin*, 58 F.3d 865, 873) (2d Cir. 1995)), *rev'd on other grounds*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Some courts have discussed whether all of the *Colon* factors are still viable after *Ashcroft*.  *See Conklin v. County of Suffolk*, 859 F. Supp. 2d 415, 439 (E.D.N.Y. 2012) (discussing cases).  However, the court in *Conklin* ultimately determined that it was unclear whether *Colon* had been overruled or limited, and continued to apply the factors

outlined in *Colon*. *Id.* In making this determination, the court in *Conklin* stated that "it remains the case that 'there is no controversy that allegations that do not satisfy any of the *Colon* prongs are insufficient to state a claim against a defendant-supervisor.'" *Id.* (quoting *Aguilar v. Immigration Customs Enforcement Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 815 (S.D.N.Y. 2011)). *See also Jones v. Smith*, No. 09-CV-1058, 2015 WL 5750136, at *8 n.6 (N.D.N.Y. Sept. 30, 2015) (discussing the use of the *Colon* factors absent definitive guidance from the Second Circuit).

### B.    Application

Plaintiff has alleged that defendant Graham had knowledge of the improper pat-frisk and other practices by the correctional officers, because plaintiff had brought them to the Superintendent's attention during ILC meetings. (Compl. at 6, 9). If this court adopts the recommendations in this report, plaintiff's only surviving claims will all relate to the July 30, 2014 incidents. Even if defendant Graham had knowledge of improper pat-frisk practices at Auburn, that would not demonstrate personal involvement in the July 30, 2014 incidents. In addition, the records including in plaintiff's opposition to this motion demonstrate that defendant Graham announced staff measures to enforce relevant pat-frisk policies and had encouraged inmates to file grievances when correctional officers violated those policies. (Dkt. No. 63-3, at 36). Therefore, this court recommends that defendant Graham's motion for summary judgment be granted as to plaintiff's remaining claims, for lack of personal involvement.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 57) be **GRANTED AS TO DEFENDANTS GRAHAM, CHUTTEY, VASILE, CONNORS, CORNELL, STEINBERG, ZIRBEL, and VENETTOZZI,** and that all of plaintiff's claims against those defendants be **DISMISSED**, and it is

**RECOMMENDED**, that defendants' motion for summary judgment be **DENIED AS TO DEFENDANTS GIFFORD[9], GILMORE, and MANNA[10] with respect to the Eighth Amendment sexual assault and failure to intervene claims, plaintiff's Fourth Amendment unreasonable search claim, and plaintiff's First Amendment retaliation claim arising from the July 30, 2014 incidents**, and it is

**RECOMMENDED**, that defendants' motion for summary judgment be **GRANTED** with respect to all other claims against defendants **GIFFORD, GILMORE, and MANNA**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

---

[9] Also listed as defendant "Greffin" on the docket.

[10] Listed as defendant Mannon on the docket.

636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:        September 26, 2017

Hon. Andrew T. Baxter
U.S. Magistrate Judge