UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MICHAEL J. ALLEN,

                          Plaintiff,

v.                                                9:16-CV-0047
                                                             (GTS/ATB)

H. GRAHAM, Super., Auburn Corr. Fac.; CHUTTEY,
Capt., Auburn Corr. Fac.; LT. JOSEPH VASILE,
Hearing Officer, Auburn Corr. Fac., f/k/a Lieutenant
Vasite; THEODORE CONNORS, Sgt., Auburn Corr.
Fac., f/k/a Connor; GIFFORD, Corr. Officer, Auburn
Corr. Fac., f/k/a Greffin; MANNA, Corr. Sgt., Auburn
Corr. Fac., f/k/a Mannon; CORNELL, Corr. Officer,
Auburn Corr. Fac.; STEINBERG, Corr. Officer. Auburn
Corr. Fac.; ZIRBEL, Corr. Officer, Auburn Corr. Fac.
f/k/a Zeke; D. VENETTOZZI, Director of S.H.U.; and
GILMORE, Corr. Officer, Auburn Corr. Fac.,

                          Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

MICHAEL J. ALLEN, 91-A-4771
  Plaintiff, *Pro Se*
Attica Correctional Facility
Box 149
Attica, New York 14011

HON. ERIC T. SCHNEIDERMAN                AIMEE M. PAQUETTE, ESQ.
Attorney General of the State of New York
  Counsel for Defendants
The Capitol
Albany, New York 12224

GLENN T. SUDDABY, Chief United States District Judge

**DECISION and ORDER**

Currently before the Court, in this *pro se* prisoner civil rights action filed by Michael J. Allen ("Plaintiff") against the eleven above-captioned employees of the New York State Department of Corrections and Community Supervision ("Defendants"), are (1) United States Magistrate Judge Andrew T. Baxter's Report-Recommendation recommending that Defendants' motion for summary judgment be granted in part and denied in part, and (2) Plaintiff's Objections to the Report-Recommendation. (Dkt. Nos. 65, 67.) For the reasons set for the below, the Report-Recommendation is accepted and adopted in its entirety.

I.     **RELEVANT BACKGROUND**

   A.     **Magistrate Judge Baxter's Report-Recommendation**

Generally, in his Report-Recommendation, Magistrate Judge Baxter rendered the following six findings of fact and conclusions of law: (1) to the extent that Defendants argue that Plaintiff's claims should be dismissed for failure to exhaust his available administrative, the Court should reject that argument with regard to all of those claims (due to the presence of admissible record evidence creating a genuine dispute of material fact) except for Plaintiff's claims related to the incident of November 24, 2014, and the disciplinary hearing of December 9, 2014, which should be dismissed for failure to exhaust; (2) both Plaintiff's Eighth Amendment excessive force claim against Defendant Gifford and his First Amendment retaliation claim against Defendants Gifford and Chuttey arising from the pat-frisk and cell-search incident of July 25, 2014, should be dismissed for failure to establish a claim; (3) with regard to Plaintiff's claims rising from the pat-frisk and strip-frisk of July 30, 2014, his Eighth Amendment sexual assault claim, his Eighth Amendment failure-to-intervene claim, his Fourth Amendment

unreasonable-search claim, and his First Amendment retaliation claim against Defendants Gifford, Manna, and Gilmore, should remain pending in this action, but his Eighth Amendment excessive force against Defendant Gifford and his First Amendment retaliation claim against Defendant Chuttey should be dismissed for failure to establish a claim; (4) Plaintiff's Eighth Amendment excessive force and sexual assault claims against Defendant Gilmore and his Eighth Amendment failure-to-intervene claim against Defendant Zirbel arising from the pat-frisk of October 7, 2014, should be dismissed for failure to establish a claim; (5) Plaintiff's Fourteenth Amendment due process claims against Defendants Vasile, Graham, and Venettozzi arising from Plaintiff's disciplinary hearing and subsequent confinement in a Special Housing Unit ("SHU") should be dismissed for failure to establish a claim; and (6) Plaintiff's supervisory liability claims Defendant Graham regarding the sole remaining claims in this action (i.e., those arising from the incidents of July 30, 2014) should be dismissed for failure to establish his personal involvement in those incidents. (Dkt. No. 65, at Parts IV-VI.)

### B. Plaintiff's Objections to the Report-Recommendation

Generally, in his Objections, Plaintiff asserts four arguments. (Dkt. No. 67.)

First, with regard to Magistrate Judge Baxter's recommendation that the Court dismiss Plaintiff's claims related to the incident of November 24, 2014, and the disciplinary hearing of December 9, 2014, for failure to exhaust, Plaintiff argues that Magistrate Judge Baxter erred by failing to inquire into whether administrative remedies were available to Plaintiff with regard to those incidents, which they were not for the following reasons: (a) despite the fact that he prematurely sent Auburn Correctional Facility Inmate Grievance Program ("IGP") Supervisor Cheryl Parmiter an appeal regarding his grievance on December 24, 2014 (i.e., before Defendant

Graham's response to his grievance was due on January 2, 2015), the Auburn Correctional Facility IGP sent him a letter indicating it had received (and was thus processing) his appeal on January 5, 2015, thus rendering the appeal timely; (b) despite the foregoing fact, the Auburn Correctional Facility IGP failed to forward the appeal to the Central Office Review Committee ("CORC"); (c) to make matters worse, due to his transfer to Upstate Correctional Facility on January 16, 2015, Plaintiff did not receive Defendant Graham's (belated) denial of January 7, 2015, until February 19, 2015; (d) although Plaintiff received a reply from Department of Corrections and Community Supervision ("DOCCS") Inmate Grievance Program ("IGP") Director Karen Bellamy on February 20, 2015, that reply was intentionally backdated as having been sent on January 8, 2015 (i.e., when Plaintiff was still at Auburn Correctional Facility), but addressed to Plaintiff at Upstate Correctional Facility (which he did not leave for until January 16, 2015), indicating it was fraudulent; (e) on February 23, 2015, Plaintiff timely appealed Defendant Graham's denial by sending a letter to IGP Supervisor Parmiter, as instructed by IGP Director Bellamy, a copy of which was received by Acting Commissioner Anthony Annucci, but never responded to by Ms. Parmiter; and (f) on April 25, 2015, Plaintiff again attempted to appeal Defendant Graham's denial by sending a letter to IGP Director Bellamy, who also refused to respond to the letter. (*Id.*)

Second, with regard to Magistrate Judge Baxter's recommendation that the Court dismiss Plaintiff's Fourteenth Amendment due process claim against Defendant Vasile, Plaintiff argues that Magistrate Judge Baxter erred by failing to address (a) the relevancy of the requested testimony of an investigator in the Inspector General's Office at the hearing, despite the fact that he was not present during the incident in question, (b) the lack of assistance of Defendant Vasile

4

(as the hearing officer) in identifying and locating the investigator, and (c) whether Defendant Vasile's denial of Plaintiff's request was alternatively supported by the fact that the testimony would have been unduly hazardous to institutional safety or correctional goals. (*Id.*)

Third, with regard to Magistrate Judge Baxter's recommendation that the Court dismiss Plaintiff's claims against Defendant Gilmore and Zirbel arising from the pat-frisk of October 7, 2014, Plaintiff argues that Magistrate Judge Baxter erred by (a) recommending the dismissal of Plaintiff's Eighth Amendment sexual assault claim against Defendant Gilmore in light of the sexual comments made by Gilmore (as well as Plaintiff's Eighth Amendment failure-to-intervene claim against Defendant Zirbel), and (b) failing address Plaintiff's First Amendment retaliation claim against Defendant Gilmore arising from the incident. (*Id.*)

Fourth, and finally, with regard to Magistrate Judge Baxter's recommendation that the Court dismiss Plaintiff's supervisory liability claims Defendant Graham (i.e., arising from the incidents of July 30, 2014), Plaintiff argues that Magistrate Judge Baxter erred by failing to apply or even mention the "deliberate indifference" avenue of supervisory liability to Plaintiff's claims against Defendant Graham (especially his failure-to-intervene claim). (*Id.*)

## II.  STANDARD OF REVIEW

When a *specific* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to a *de novo* review. Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C). To be "specific," the objection must, with particularity, "identify [1] the portions of the proposed findings, recommendations, or

report to which it has an objection and [2] the basis for the objection." N.D.N.Y. L.R. 72.1(c).[1] When performing such a *de novo* review, "[t]he judge may . . . receive further evidence. . . ." 28 U.S.C. § 636(b)(1).  However, a district court will ordinarily refuse to consider evidentiary material that could have been, but was not, presented to the magistrate judge in the first instance.[2]  Similarly, a district court will ordinarily refuse to consider argument that could have been, but was not, presented to the magistrate judge in the first instance.  *See Zhao v. State Univ. of N.Y.*, 04-CV-0210, 2011 WL 3610717, at *1 (E.D.N.Y. Aug. 15, 2011) ("[I]t is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.") (internal quotation marks and citation omitted); *Hubbard v. Kelley*, 752 F. Supp.2d 311,

---

[1] *See also Mario v. P&C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Although Mario filed objections to the magistrate's report and recommendation, the statement with respect to his Title VII claim was not specific enough to preserve this claim for review. The only reference made to the Title VII claim was one sentence on the last page of his objections, where he stated that it was error to deny his motion on the Title VII claim '[f]or the reasons set forth in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment.' This bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title VII claim.").

[2] *See Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters*, 894 F.2d 36, 40, n.3 (2d Cir. 1990) (finding that district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *cf. U. S. v. Raddatz*, 447 U.S. 667, 676, n.3 (1980) ("We conclude that to construe § 636(b)(1) to require the district court to conduct a second hearing whenever either party objected to the magistrate's credibility findings would largely frustrate the plain objective of Congress to alleviate the increasing congestion of litigation in the district courts."); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition ("The term 'de novo' does not indicate that a secondary evidentiary hearing is required.").

312-13 (W.D.N.Y. 2009) ("In this circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.") (internal quotation marks omitted).

When only a *general* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review.  Fed. R. Civ. P. 72(b)(2),(3); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition; *see also Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *2-3 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion*, 175 F.3d 1007 (2d Cir. 1999).  Similarly, when an objection merely reiterates the *same arguments* made by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the report-recommendation challenged by those arguments to only a *clear error* review.[3]  Finally, when *no* objection is made to a portion of a report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review.  Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition.  When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in

---

[3]     *See Mario*, 313 F.3d at 766 ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under either Fed. R. Civ. P. 72(b) or Local Civil Rule 72.3(a)(3)."); *Camardo v. Gen. Motors Hourly-Rate Emp. Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992) (explaining that court need not consider objections that merely constitute a "rehashing" of the same arguments and positions taken in original papers submitted to the magistrate judge); *accord, Praileau v. Cnty. of Schenectady*, 09-CV-0924, 2010 WL 3761902, at *1, n.1 (N.D.N.Y. Sept. 20, 2010) (McAvoy, J.); *Hickman ex rel. M.A.H. v. Astrue*, 07-CV-1077, 2010 WL 2985968, at *3 & n.3 (N.D.N.Y. July 27, 2010) (Mordue, C.J.); *Almonte v. N.Y.S. Div. of Parole*, 04-CV-0484, 2006 WL 149049, at *4 (N.D.N.Y. Jan. 18, 2006) (Sharpe, J.).

order to accept the recommendation." *Id.*[4]

After conducting the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

## III.    ANALYSIS

After carefully reviewing the relevant papers herein, including Magistrate Judge Baxter's thorough Report-Recommendation, the Court can find no clear error in the parts of the Report-Recommendation to which Plaintiff did not specifically object: Magistrate Judge Baxter employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. As a result, those portions of the Report-Recommendation are accepted and adopted for the reasons stated therein.

With regard to those parts of the Report-Recommendation to which Plaintiff did specifically object, the Court can find no error in the parts of the Report-Recommendation challenged by any of Plaintiff's four objections.

Before discussing Plaintiff's four objections, the Court finds that a preliminary observation is appropriate: although various portions of the Report-Recommendation recommend that claims be dismissed "for failure to state a claim," and although a failure to state a claim under Fed. R. Civ. P. 12(b)(6) may support a grant of a motion for summary judgment under Fed. R. Civ. 56, the Court does not construe any of the above-referenced portions of the

---

[4]    *See also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks and citations omitted).

Report-Recommendation as being based a failure-to-state-a-claim analysis (which, of course, is restricted to the four corners of a complaint) but based on a failure-to-*establish*-a-claim analysis (i.e., an analysis of whether the non-movant has adduced admissible record evidence to avoid the entry of summary judgment against the non-movant). *See Schwartz v. Compagnise General Transatlantique*, 405 F.2d 270, 273-74 (2d Cir. 1968) ("Where appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment."); *Katz v. Molic*, 128 F.R.D. 35, 37-38 (S.D.N.Y. 1989) ("This Court finds that . . . a conversion [of a Rule 56 summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to the parties.").

Turning to Plaintiff's four objections, with regard to the first objection (i.e., concerning exhaustion of administrative remedies), the Court finds that this objection relies on an incorrect assertion that the Auburn Correctional Facility Inmate Grievance Resolution Committee's ("IGRC") act of sending him on January 5, 2015, a copy of his appeal dated December 23, 2014, stamped "Received" as of December 29, 2014, in some way states or reasonably suggests (especially to an experienced grievant such as Plaintiff, who should know better) that the IGRC was therefore "processing" his premature appeal. (Dkt. No. 63, Attach. 3, at 119 [Plf.'s Ex. 23].) Indeed, Plaintiff's argument (which is bereft of a citation to admissible record evidence establishing that the IGRC sent him a cover letter dated anytime after January 2, 2015, when Defendant Graham's decision was due) hinges on the unsupported assertion that a premature administrative appeal must be held in abeyance pending the issuance of the decision from which the appeal is taken.

Nor does Plaintiff's first objection successfully rely on DOCCS IGP Director Karen Bellamy's purportedly "fraudulent" letter of January 8, 2015. For the sake of brevity, the Court will set aside the possibility that Director Bellamy knew on January 8 that Plaintiff would soon be transferred to Upstate Correctional Facility, or the possibility a prior version of the letter was addressed and mailed to Plaintiff at Auburn Correctional Facility and, after being returned to the IGP due to Plaintiff's transit to Upstate Correctional Facility, was revised so as to insert a new address but retain the original date. (Dkt. No. 63, Attach. 3, at 121 [Plf.'s Ex. 25].) The Court will also set aside the conspicuous omission from Plaintiff's affidavit that the copy of Defendant Graham's denial of January 7, 2015, which he received on February 20, 2015, was the *first* copy of that letter that he had seen between January 7, 2015, and February 20, 2015. (Dkt. No. 63, Attach. 1, at ¶ 47 [Plf.'s Affid.].) More important is the fact that, after Defendant Graham's denial was not received by Plaintiff on January 2, 2015, the deadline for Plaintiff's appeal immediately started running. 7 N.Y.C.R.R. § 701.8(g) ("If the superintendent fails to respond within the required 25 calendar day time limit the grievant may appeal his/her grievance to CORC."); *cf.* 7 N.Y.C.R.R. § 701.6(g) ("[M]atters not decided within the time limits may be appealed to the next step."); *see also Murray v. Palmer,* 03-CV-1010, 2010 WL 1235591, at *2 & n.4 (N.D.N.Y. March 31, 2010) [collecting cases]. The fact that Plaintiff subsequently received an untimely decision does not somehow exempt him from this rule: he could have, and should have, filed an appeal after January 2, 2015.

With regard to Plaintiff's second objection (i.e., concerning Plaintiff's Fourteenth Amendment due process claim against Defendant Vasile), the Court finds that this objection consists simply of a reiteration of an argument previously asserted in his underlying opposition

memorandum of law.  (*Compare* Dkt. No. 67, at "Second  Objection" [Plf.'s Obj.] *with* Dkt. No. 63, Attach. 1, at 19-20 [attaching pages "16" and "17" of Plf.'s Opp'n Memo. of Law].)  As a result, the portion of the Report-Recommendation challenged by Plaintiff's second objection is entitled to only a clear-error review, which it easily survives.

In the alternative, this portion of the Report-Recommendation survives a *de novo* review.  In particular, Plaintiff's second objection presumes that the investigator from the Inspector General's Office would have testified at Plaintiff's disciplinary hearing that, during his investigation, the investigator determined that Defendants Chuttey, Manna, Gilmore and/or Gifford actually took wrongful actions against Plaintiff, and that they did so because of one or more complaints made by Plaintiff to the Inspector General's Office.  The record contains no admissible evidence that the investigator actually would have so testified.  (*See, e.g.,* Dkt. No. 63, at ¶ 58 [Plf.'s Affid., assuming without explanation that investigator would have offered such testimony]; *accord,* Dkt. No. 57, Attach. 9, at 23-25, 138-39 [attaching pages "17," "18," 19," "132" and "133" of Discip. Hrg. Tr.].)  The mere evidentiary value of the investigator's hearing testimony might have been to support the temporal proximity between Plaintiff's complaint to the Inspector General's Office and the adverse action purportedly taken against him.  However, temporal proximity is just one factor in determining whether protected speech caused adverse action (for purposes of a retaliation claim).  Moreover, Plaintiff had a full and fair opportunity at his disciplinary hearing to testify that he had complained to the Inspector General's Office before the adverse action taken against him; and, even if that testimony had been corroborated by that of an investigator from the Inspector General's Office, the hearing officer was free to find that the charges against Plaintiff were not caused by his complaint but by his own wrongful conduct.

Finally, 16 other witnesses had already testified at the hearing. For all of these reasons, the Court has trouble finding that the denial by Defendant Vasile was not "logically related to preventing undue hazards to . . . correctional goals," *see Ponte v. Real*, 471 U.S. 491, 497 (1986) (internal quotation marks omitted), specifically, preventing disciplinary hearings from exceeding reasonable limits through the introduction of testimony from "witnesses" whose possess little, if any, personal knowledge of relevant facts.

With regard to Plaintiff's third objection (i.e., concerning Plaintiff's claims against Defendant Gilmore and Zirbel arising from the pat-frisk of October 7, 2014), the Court finds that this objection conveniently glosses over the fact that the alleged sexual assault by Defendant Gilmore occurred during an isolated pat-frisk as Plaintiff was moving between cell blocks (i.e., a time that pat-frisks generally serve a penological purpose). Moreover, the nature of the alleged sexual assault is distinguishable from the one that allegedly occurred during the strip search of Plaintiff on July 30, 2014. More specifically, at most, Plaintiff has established that, during the pat-frisk on October 7, 2007, Defendant Gilmore made a few callous and/or offensive remarks while caressing Plaintiff's chest and repeatedly groping Plaintiff's genitals and buttocks.[5] Numerous district courts in the Second Circuit have found similar such physical conduct to not rise to the level of an Eighth Amendment violation.[6] This has been the case even when

---

[5] (Dkt. No. 63, at ¶ 21, 23, 25 [Plf.'s Affid.]; Dkt. No. 63, Attach. 3, at 70 [Plf.'s Ex. 12, attaching grievance]; Dkt. No. 57, Attach. 4, at 45-49 [Plf.'s Depo. Tr.]; Dkt. No. 1, at ¶¶ 44-47 [Plf.'s Verified Compl.]; Dkt. No. 63, Attach. 3, at 68-69 [Plf.'s Ex. 11, attaching Rodney Bailey's Affidavit]).

[6] *See, e.g., Caldwell v. Crossett*, 09-CV-0576, 2010 WL 2346337, at *1, 3 (N.D.N.Y. May 24, 2010) (Treece, M.J.) (dismissing Eighth Amendment sexual-assault claim based incident in which defendant grabbed plaintiff's testicles during a pat-frisk, exchanged words with plaintiff, and then grabbed plaintiff's testicles again, before plaintiff attended a visit),

defendants made inappropriate remarks during the pat-frisk.[7]  Simply stated, while the conduct Plaintiff describes is unprofessional, it does not violate the Eighth Amendment.

Furthermore, the Court finds that, based on the evidence in the record, such a solitary pat-frisk (even when accompanied by callous and/or offensive remarks) does not even rise to the

---

*adopted by* 2010 WL 2346330 (N.D.N.Y. June 9, 2010) (Kahn, J.); *Garcia v. Watts*, 08-CV-7778, 2009 WL 2777085, at *1, 7 (S.D.N.Y. Sept. 1, 2009) (dismissing Eighth Amendment sexual-assault claim based on two episodes of sexual contact, including incident in which defendant grabbed plaintiff's buttocks during a pat-down before plaintiff entered a counselor's office); *Young v. Poff*, 04-CV-0320, 2006 WL 1455482, at *4 (W.D.N.Y. May 22, 2006) (dismissing Eighth Amendment sexual-assault claim based on incident in which defendant groped plaintiff during a pat-frisk); *Moncrieffe v. Witbeck*, 97-CV-0253, 2000 WL 949457, at *1, 6 (N.D.N.Y. June 29, 2000) (Mordue, J.) (dismissing Eighth Amendment sexual-assault claim based on incident in which defendant felt plaintiff's genitals and rear during a pat-frisk, and another incident in which a second defendant repeatedly felt plaintiff's genitals during a pat-frisk); *Williams v. Keane*, 95-CV-0379, 1997 WL 527677, at *1, 11 (S.D.N.Y. Aug. 25, 1997) (dismissing Eighth Amendment sexual-assault claim based on incident in which defendant fondled plaintiff's chest, reached inside plaintiff's pants, and felt plaintiff's testicles during a pat-frisk after a metal detector was set off as plaintiff left the mess hall); *Friedman v. Young*, 702 F. Supp. 433, 434, 436 (S.D.N.Y. 1988) (dismissing Eighth Amendment sexual-assault claim based on incident in which defendant fondled plaintiff's genitals and anus during a pat-down before plaintiff left his cell).

[7]  *See, e.g., Amaker v. Fischer*, 10-CV-0977, 2014 WL 8663246, at *3 (W.D.N.Y. Aug. 27, 2014) (recommending the dismissal of Eighth Amendment sexual-assault claim based on a pat-frisk in which defendant "rub[bed] plaintiff's penis, fondl[ed] and squeez[ed] plaintiff's buttocks and [ran] his index finger across plaintiff's anus," while making inappropriate remarks to plaintiff), *adopted by* 2015 WL 1822541 (W.D.N.Y. Apr. 22, 2015); *Sharpe v. Taylor*, 05-CV-1003, 2009 WL 1743987 at *10 (N.D.N.Y. March 26, 2009) (Suddaby, J.) (dismissing Eighth Amendment sexual-assault claim based on allegations that defendant sexually harassed plaintiff and fondled plaintiff's anus while plaintiff was being processed into the SHU); *Allan v. Woods*, 05-CV-1280, 2008 WL 724240, at *9 & n.8 (N.D.N.Y. March 17, 2008) (Mordue, C.J.) (rejecting Eighth Amendment sexual-assault claim based on incident in which defendant allegedly "fondled plaintiff during a pat frisk and complimented plaintiff's genitals"); *Davis v. Castleberry*, 364 F. Supp. 2d 319, 320-22 (W.D.N.Y. 2005) (dismissing Eighth Amendment sexual-assault claim based on incident in which defendant grabbed plaintiff's penis while making a callous remark during a pat-frisk before plaintiff entered the exercise yard); *Montero v. Crusie*, 153 F. Supp. 2d 368, 373, 375 (S.D.N.Y. 2001) (dismissing Eighth Amendment sexual-assault claim based on several incidents in which defendant squeezed plaintiff's genitalia during pat-frisks, and offered plaintiff privileges in exchange for sexual favors).

level of adverse action for purposes of a First Amendment retaliation claim.  *See Amaker v. Fischer*, 10-CV-0977, 2014 WL 8663246, at *3 (W.D.N.Y. Aug. 27, 2014) (recommending the dismissal of First Amendment retaliation claim for lack of adverse action where defendant allegedly sexually assaulted plaintiff during a pat-frisk by "rubbing plaintiff's penis, fondling and squeezing plaintiff's buttocks and running his index finger across plaintiff's anus," while defendant criticized plaintiff for writing grievances), *adopted by* 2015 WL 1822541 (W.D.N.Y. Apr. 22, 2015).

Finally, with regard to Plaintiff's fourth objection (i.e., concerning the personal involvement of Defendant Graham), this objection presumably refers to the fifth avenue of supervisory liability, namely, the exhibition of deliberate indifference to the rights of an inmate by failing to act on information indicating that the violation was occurring.  *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994).  Regardless of whether or not this is Plaintiff's intent, he is incorrect that Magistrate Judge Baxter failed to apply the correct standard.  Plaintiff has failed to point to admissible record evidence establishing that Defendant Graham received information indicating the occurrence of the incidents of July 30, 2014, either before they occurred or as they were occurring.  In any event, Defendant Graham announced staff measures to enforce relevant pat-frisk policies and encouraged inmates to file grievances when corrections officers violated those policies.

For all of these reasons, the Court adopts the Report-Recommendation in its entirety.

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Baxter's Report-Recommendation (Dkt. No. 65) is **ACCEPTED and ADOPTED in its entirety**; and it is further

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 57) is **GRANTED in part** and **DENIED in part**, such that all of Plaintiff's claims be **DISMISSED except** the following claims, which shall **SURVIVE** Defendants' motion:

(1) Plaintiff's Eighth Amendment sexual assault claim against **DEFENDANTS GIFFORD, GILMORE,** and **MANNA**, arising from the incidents of July 30, 2014;

(2) Plaintiff's Eighth Amendment failure-to-intervene claim against **DEFENDANTS GIFFORD, GILMORE,** and **MANNA**, arising from the incidents of July 30, 2014;

(3) Plaintiff's Fourth Amendment unreasonable search claim against **DEFENDANTS  GIFFORD, GILMORE,** and **MANNA**, arising from the incidents of July 30, 2014;

(4) Plaintiff's First Amendment retaliation claim asserted against **DEFENDANTS GIFFORD, GILMORE,** and **MANNA**, arising from the incidents of July 30, 2014; and it is further

**ORDERED** that Pro Bono Counsel be appointed for the Plaintiff for purposes of trial only; any appeal shall remain the responsibility of the plaintiff alone unless a motion for appointment of counsel for an appeal is granted; and it is further

**ORDERED** that upon assignment of Pro Bono Counsel, a pretrial conference with counsel will be scheduled in this action, at which time the Court will schedule a date for trial. The parties are directed to appear at that pretrial conference with settlement authority.

Dated: December 1, 2017
Syracuse, New York

HON. GLENN T. SUDDABY
Chief United States District Judge